ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 

 hThis disciplinary matter arises from formal charges filed by the Office of Disci
 
 *474
 
 plinary Counsel (“ODC”) against respondent, August L. Gomez, an attorney licensed to practice law in Louisiana.
 

 UNDERLYING FACTS AND PROCEDURAL HISTORY
 

 The ODC filed two sets of formal charges against respondent. The first set of formal charges, 03-DB-041, was filed in July 2003. The second set of formal charges, 07-DB-050, was filed in September 2007.
 

 Respondent failed to answer either set of formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearings were held, but the parties were given an opportunity to file with the hearing committees written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for either hearing committee’s consideration.
 

 The two sets of formal charges were considered by separate hearing committees before being consolidated by order of the disciplinary board. The board subsequently filed in this court a single recommendation of discipline encompassing both sets of formal charges.
 

 J20S-DB-0U
 

 The King Matter
 

 Sometime after March 31, 1998, Lordez Lewis King hired respondent to handle her employment discrimination claim. Beginning in June 1998, Ms. King paid respondent a total of $5,000 in fees and costs.
 
 [1]
 

 Also in June 1998, respondent filed suit in federal court on Ms. King’s behalf. However, the suit was dismissed in December 1999 after respondent failed to oppose the defendants’ motion for summary judgment and motion to dismiss. In January 2000, respondent filed a motion for an extension of time to file a motion for reconsideration, indicating he was unable to timely respond to the defendants’ motions because of his “serious medical, psychological and emotional concerns caused and/or aggravated by family problems, work-related and other stressful situations to be explained and documented as fully as possible.” The federal court denied his request but gave him an opportunity to refile the request with appropriate medical documentation (under seal) that would establish good cause to grant the extension. Nonetheless, respondent failed to file any supplemental pleadings or documentation.
 

 During the course of the representation, respondent also failed to respond to Ms. King’s numerous telephone calls and failed to keep her informed of the status of her case. As a result, in October 2000, she filed a disciplinary complaint against him. On December 12, 2001, Ms. King obtained a judgment against respondent in Baton Rouge City Court in the amount of $5,000 (with a credit of $3,500) plus legal interest in the amount of $418.98 and costs in the amount of $155.
 

 lain response to Ms. King’s disciplinary complaint, respondent indicated that, during the representation, he experienced a series of medical, personal, and office staff problems.
 
 [2]
 
 He failed to provide the ODC
 
 *475
 
 with an accounting for the $5,000 and failed to respond to the ODC’s inquiry as to whether he had satisfied Ms. King’s judgment.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(a) (charging an unreasonable fee), 1.5(f) (failure to account for or refund an unearned fee), 1.7(b) (A lawyer shall not represent a client if the representation may be materially limited by the lawyer’s responsibilities to another client, to a third person, or by the lawyer’s own interests), 1.16(a) (a lawyer shall not represent a client if the lawyer’s physical or mental condition materially impairs the lawyer’s ability to represent the client), 1.16(d) (obligations upon termination of the representation), 3.2 (failure to make reasonable efforts to expedite litigation), 3.3(a) (candor toward the tribunal), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 8.3(a) (failure to report professional misconduct), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
 

 _|4Hearing Committee Report
 

 As previously noted, respondent failed to file an answer to the formal charges in 03-DB-041, and consequently, the factual allegations contained therein were deemed admitted. After considering the ODC’s deemed admitted submission, the hearing committee determined that the factual allegations of the formal charges were deemed admitted and proven by clear and convincing evidence. The committee made the following factual findings: (1) respondent negligently or intentionally neglected a legal matter, (2) respondent intentionally failed to properly communicate with Ms. King regarding the status of her legal matter, (3) respondent intentionally failed to reveal his physical or mental incapacity to Ms. Eng, (4) respondent intentionally failed to account for funds received from Ms. Eng, and (5) respondent failed to properly cooperate in the ODC’s investigation of the complaint. Additionally, the committee found that respondent did not refund any of the $5,000 advanced by Ms. King. As such, Ms. King was required to file a lawsuit and obtain a judgment against respondent to recover the funds. As of May 2003, Ms. King reported that respondent still owed $573.98 on the judgment.
 

 Based on these facts, the committee determined that respondent violated Rules 1.3, 1.4, 1.5(f), 1.16(a), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), and 8.1(c) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct. The committee did not address whether respondent violated Rules 1.1(a), 1.5(a), 1.7(b), 1.16(d), 3.2, 3.3(a), 3.4(c), 8.3(a), 8.4(a), 8.4(c), and 8.4(d).
 

 The committee determined that respondent caused substantial harm to Ms. King by depriving her of the opportunity to litigate her allegations of employment discrimination. He also caused harm to the legal profession by undermining the | ,spublic’s confidence in the profession.
 
 *476
 
 Relying on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the committee determined that the baseline sanction is suspension.
 

 In aggravation, the committee recognized respondent’s prior disciplinary offenses
 
 [3]
 
 and substantial experience in the practice of law (admitted 1987). The committee found no mitigating factors present, declining to consider respondent’s physical and emotional problems in mitigation because “respondent has failed and/or refused to provide sufficient medical information to permit a proper analysis.”
 

 After further considering this court’s prior jurisprudence regarding similar misconduct, the committee recommended respondent be suspended from the practice of law for one year and one day.
 

 Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.
 

 07-DB-050
 

 The Watkins Matter
 

 In 2003, Evelyn Watkins hired respondent to assist her in the following matters:
 

 1)A dispute with a mausoleum and funeral home over the mausoleum and casket provided for her husband, who died on September 8, 2003. Ms. Watkins gave respondent her original invoices, and he instructed her to withhold payment of $8,233.60 to the funeral home until he completed his investigation of the matter. Thereafter, respondent failed to contact the mausoleum or the funeral | r,home and failed to complete the matter. He also failed to return Ms. Watkins’ documents.
 

 2) A dispute with a car repair company over a safety inspection and car repairs to Ms. Watkins car performed on October 17, 2003. Respondent’s sole action on Ms. Watkins’ behalf was a November 20, 2003 demand letter.
 

 3) Anticipated foreclosure proceedings on property Ms. Watkins, along with her cousin, inherited from her deceased mother and aunt. In November 2003, respondent informed Ms. Watkins that he needed $13,000 from her as a show of good faith to prevent a sheriffs sale of the property. Accordingly, Ms. Watkins obtained a cashier’s check in that amount payable to respondent. Respondent assured Ms. Watkins that her $13,000 would be refunded upon settlement of her cousin’s workers’ compensation case, which respondent was also handling. Thereafter, respondent informed Ms. Watkins that he had negotiated a $22,500 payoff amount with the mortgage holder. Despite Ms. Watkins’ numerous requests, respondent failed to return her $13,000. Instead, in December 2003, he negotiated the check but failed to deposit the funds into his client trust account. He advised Ms. Watkins that the mortgage note was paid, informing her that he had divided the payoff amount equally between Ms. Watkins and her cousin. However, he did so without her knowledge or consent.
 
 [4]
 
 Respondent failed to
 
 *477
 
 respond to Ms. Watkins’ numerous requests for an explanation and an accounting.
 

 |7In January 2004, Ms. Watkins filed a disciplinary complaint against respondent. However, respondent failed to submit the required written response to the complaint.
 
 [5]
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a) (scope of the representation), 1.3, 1.4, 1.15(a) (safekeeping property of a client or third person), 1.15(c) (when a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests), 1.15(d) (A lawyer shall create and maintain an interest-bearing trust account for clients’ funds), 1.15(e) (safekeeping property of a client or third person), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a), and 8.4(c).
 

 The Dear Matter
 

 Dr. William Dear, of the Back & Neck Clinic of Louisiana, treated one of respondent’s personal injury clients from October 29, 1996 through January 14, 1997. On January 16, 1997, respondent received notice of Dr. Dear’s notice of health care provider privilege related to his client’s treatment. In October 1997, respondent settled his client’s personal injury claim for $2,000. Although he withheld funds from the settlement to pay Dr. Dear, respondent failed to forward the funds. As such, Dr. Dear added an additional $170.65 in interest and collection fees to the client’s $670 bill.
 

 | Jn March 2004, Dr. Dear filed a disciplinary complaint against respondent. Despite being given two extensions of time to submit a written response to the complaint, respondent failed to respond. However, in April 2005, respondent informed the ODC’s investigator that his former office assistant had settled the client’s case and retained the funds without his knowledge.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.8, 1.15(c), 5.3 (failure to properly supervise a non-lawyer assistant), 8.1(c), and 8.4(a).
 

 The LeBlanc Matter
 

 In May 2004, Gale LeBlanc filed a disciplinary complaint against respondent. Despite receiving notice of the complaint, respondent failed to submit a written response. In January 2005, the ODC’s investigator reminded respondent that he needed to submit a written response to the complaint. Nevertheless, respondent failed to submit the response.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.1(c), and 8.4(a).
 

 Hearing Committee Report
 

 As previously noted, respondent failed to file an answer to the formal charges in 07-DB-050, and consequently, the factual allegations contained therein were deemed admitted. After considering the ODC’s deemed admitted submission, the hearing
 
 *478
 
 committee determined that the factual allegations of the formal charges have been deemed admitted and proven by clear and convincing evidence. The committee stated that the evidence proves respondent converted Ms. Watkins’ funds, failed to |flcomplete Ms. Watkins’ legal matters, failed to protect Dr. Dear’s interest in settlement proceeds, failed to supervise a non-lawyer assistant, and failed to cooperate in the underlying investigations. The committee also found that the record establishes that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
 

 The committee determined that respondent knowingly and intentionally violated duties owed to his clients and the legal system. With respect to the harm caused by respondent’s conduct, the committee stated:
 

 Ms. Watkins has been deprived of her funds and was delayed in the resolution of her legal matters; Back & Neck Clinic has not been paid for services rendered to Respondent’s client; Ms. Le-Blanc has not received a response to her complaint; and the Office of Disciplinary Counsel has expended its limited resources locating Respondent and seeking answers to the complaints filed against him.
 

 The committee found the following factors in aggravation: prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law, and indifference to making restitution. The committee found “no obvious mitigating factors for consideration.”
 

 The committee further determined that the ABA’s
 
 Standards for Imposing Lawyer Sanctions
 
 and this court’s prior jurisprudence establish that disbarment is the baseline sanction for converting client funds. Noting that the record does not support a downward deviation from disbarment, the committee recommended that respondent be permanently disbarred.
 

 |1(lNeither respondent nor the ODC filed an objection to the hearing committee’s recommendation.
 

 Disciplinary Board Recommendation
 

 After reviewing these consolidated matters, the disciplinary board determined the following:
 

 With respect to 03-DB-041, the board found nothing in the record to suggest the deemed admitted facts as set forth in the formal charges are manifestly erroneous. Based on those facts, the board determined that respondent violated Rules 1.3, 1.4, and 1.5(f) of the Rules of Professional Conduct. The board further determined that respondent did not violate Rule 1.16(a) because it is incongruent to find respondent’s medical records are insufficient to establish the mitigating factor of mental or physical impairment but are sufficient to establish a rule violation involving his failure to withdraw from a representation due to an impairment. With respect to the other alleged rule violations, the board noted that the ODC did not object to the hearing committee’s failure to find violations of said rules; thus, the board determined that the ODC has dismissed those alleged rule violations.
 

 With respect to 07-DB-050, the board again found nothing in the record to suggest the deemed admitted facts as set forth in the formal charges are manifestly erroneous. Based on those facts, the board determined that respondent violated Rules 1.2(a), 1.3,1.4,1.15(a), 5.3, 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
 
 *479
 
 The board further determined that respondent did not violate Rules 1.15(c), 1.15(d), 1.15(e), and 8.4(c).
 

 Based on the above findings, the board determined that respondent has neglected the legal matters of his clients and failed to communicate with them. He L,has failed to return an unearned fee to one client and mishandled $13,000 given to him by another client. He has also failed to properly supervise a non-lawyer assistant, resulting in the theft of client funds withheld to pay a third-party medical provider. Additionally, respondent failed to cooperate with the ODC in its investigations. However, the board noted that the record does not support the conclusion that respondent converted Ms. Watkins’ funds to his own use or converted the funds due Dr. Dear to his own use.
 

 The board further determined that respondent knowingly violated duties owed to his clients, the legal system, and the legal profession. His conduct has resulted in actual serious injury to his clients and a third-party medical provider and has impaired the efficient operation of the disciplinary process. However, the board noted that, even though Ms. Watkins was deprived of her funds by respondent’s misapplication of her money, she derived a benefit from his payment to the mortgage holder. In light of the ABA’s
 
 Standards for Imposing Latvyer Sanctions,
 
 the board determined that disbarment is the baseline sanction.
 

 In aggravation, the board found prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law, and indifference to making restitution. In mitigation, the board recognized respondent’s personal or emotional problems.
 

 In determining an appropriate sanction, the board cited
 
 In re: Williams,
 
 06-2578 (La.2/2/07), 947 So.2d 710, wherein this court disbarred an attorney who neglected legal matters, failed to communicate with clients, failed to protect a client’s interest upon termination of the representation, and failed to cooperate with the ODC 112in its investigations. The board determined that respondent’s lack of concern for the welfare of his clients and his failure to cooperate with the ODC, coupled with the presence of significant mitigating factors, support a sanction of disbarment.
 

 Accordingly, the board recommended that respondent be disbarred. The board also recommended that respondent be ordered to make full restitution to Ms. King, Ms. Watkins, and Dr. Dear.
 

 Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Banks,
 
 09-1212 (La.10/2/09), 18 So.3d 57.
 

 In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow
 
 *480
 
 from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations.
 
 In re: Dorman,
 
 01-3058 (La.1/10/03), 838 So.2d 715.
 

 | iaThe deemed admitted facts in this consolidated matter establish that respondent neglected legal matters, failed to communicate with clients, failed to account for or refund unearned fees, failed to promptly remit funds to a third-party medical provider, used client funds for an unauthorized purpose, failed to properly supervise a non-lawyer assistant, and failed to cooperate with the ODC in its investigations. Accordingly, he violated Rules 1.2(a), 1.3, 1.4, 1.5(f), 1.15(b) (failure to timely remit funds to a client or third person),
 
 [6]
 
 3.2, 5.3, 8.4(a), and 8.4(d) of the Rules of Professional Conduct.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 Respondent violated duties owed to his clients, the public, the legal system, and the legal profession. He acted knowingly and caused harm to his clients, a third-party medical provider, and the disciplinary system. According to the ABA’s
 
 Standards for Imposing Laiuyer Sanctions,
 
 the baseline sanction is in the
 
 range of
 
 a suspension to disbarment.
 

 Numerous aggravating factors are present, including respondent’s prior disciplinary offenses, a pattern of misconduct, multiple offenses, bad faith obstruction |14of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law. The record supports the mitigating factors of personal or emotional problems and delay in the disciplinary proceedings.
 

 Regarding respondent’s personal or emotional problems, respondent has admitted that he has suffered and continues to suffer with serious health issues, including heart problems, lymphoma, and depression. However, he also indicated that he does not believe these conditions prevent him from properly practicing law. Thereftxre, although we recognize respondent’s health problems as a mitigating factor, we do not give them significant weight in determining an appropriate sanction.
 

 Turning to the issue of an appropriate sanction, we find that respondent’s conduct demonstrates a lack of concern for the welfare and wishes of his clients, particularly Ms. Watkins. He has also shown a serious disregard for his obligation to cooperate with the ODC. We considered similar misconduct in
 
 In re: Gines,
 
 03-2827
 
 *481
 
 (La.3/19/04), 869 So.2d 778. In
 
 Gines,
 
 the attorney engaged in a pattern of neglect of legal matters, failure to communicate with clients, and failure to account for fees. She also charged an excessive legal fee. As in the instant matter, numerous aggravating factors were present, and the attorney had personal or emotional problems in mitigation. For the misconduct in
 
 Gines,
 
 we imposed disbarment.
 

 In light of the numerous aggravating factors present in this matter, we will adopt the disciplinary board’s recommendation and impose disbarment. We will also order respondent to make full restitution to his victims.
 

 _|_^DECREE
 

 Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that August L. Gomez, Louisiana Bar Roll number 17957, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall pay full restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 [1]
 

 . Ms. King claimed that respondent initially had her sign a contingency fee contract but refused to give her a copy of the contract. Months later, he asked her for three separate advance payments on his fee, totaling $5,000.
 

 [2]
 

 . Specifically, respondent stated that he has had five heart attacks, requiring one open-heart surgery. He also stated that his secretary and his paralegal both resigned and his investigator was killed in a car accident. Furthermore, his wife was required to relo
 
 *475
 
 cate out of state for her job, and his son began to become increasingly defiant of authority and failed the ninth grade. His medical records also reveal his diagnosis and treatment of depression beginning in February 2000.
 

 [3]
 

 . Respondent's prior disciplinary history consists of the following: a July 1994 admonition for failure to cooperate, a March 1995 admonition for failure to act with reasonable diligence, and a June 1995 admonition for failure to cooperate.
 

 [4]
 

 . Ms. Watkins sued respondent and, in December 2007, obtained a judgment against him in the amount of $13,000, plus interest, attorney's fees, and court costs. At the trial, Ms. Watkins' cousin testified that he had agreed with Ms. Watkins that he would pay off the entire mortgage out of his workers’ compensation settlement money. Despite this agreement, Ms. Watkins’ cousin told respondent that Ms. Watkins was willing to pay half of the mortgage payoff. Under these circumstances, the judge found that “[i]t was incum
 
 *477
 
 bent on [respondent], as an attorney and also as the custodian of [Ms. Watkins'] funds, to use them as [Ms. Watkins] herself desired, and not as her cousin instructed."
 

 [5]
 

 . In an interview with the ODC's investigator in October 2004, respondent stated that he failed to answer the complaint because he was battling severe depression and lymphoma, for which he was receiving aggressive chemotherapy.
 

 [6]
 

 . This rule violation refers to the version of Rule 1.15(b) in effect at the time of respondent’s misconduct in the Dear matter.